### KELLOGG v. CHAPMAN.

*(Circuit Court, D. Nebraska. May 9, 1887.)*

1. EQUITY—REFORMATION OF DEED.

It was discovered that owing to a mistake in the measurements of a lot, a portion forming a narrow gore six to ten feet in width had not been conveyed in a deed. This portion lay between the rest of the lot and a street. It appeared that measurements corresponding with the measurements in the original plat were used in the deed; that the defendant had failed for 22 years to assert any title to the omitted portion; and that his grantee had made large improvements upon a part of the tract, and had regularly paid the taxes. It was also in evidence that the grantor had admitted that he supposed he had conveyed the whole lot. *Held,* that the circumstances and the evidence sufficiently established the intention to convey the whole lot, and that the court would reform the deed.[1]

2. SAME—LACHES.

Defendant claimed that a portion of the purchase price of certain property held by plaintiff had not been paid, but it appeared that defendant had for a series of 22 years made no effort to collect said balance. *Held,* that defendant's inaction was sufficiently significant to establish that no such balance of purchase money remained unpaid.

In Equity. Bill to reform deed.

BREWER, J. This is a bill to correct a mistake in a deed. The facts are these:

In 1880 one John H. Kellom was the owner of 40 acres situated in the city of Omaha. He platted the tract as Capitol addition to said city, dividing the tract into nine lots of various forms and sizes, one of which was numbered lot 6, and was supposed to contain 16 6-100 acres. On the north side of the lot was laid out a street named Farnam street, which was an extension of one of the principal streets of the city. According to the plat the boundaries of said lot were as follows:

"Beginning at the north-east corner of said lot on Farnam street, running west five hundred and sixty feet; thence south twenty-nine feet; thence west eight hundred and fifteen feet; thence south, on the extreme west line of the lands first above described, four hundred and ninety-seven feet to the south-east corner of said lands; thence east, on the south line of said tract and on the line of the government survey, thirteen hundred and seventy-five feet; thence north five hundred and twenty-six feet, to the place of beginning."

The same year Kellom and wife conveyed by deed said lot 6 to one Houston Nuckolls, and on the twelfth of November, 1861, the said Nuckolls and wife conveyed the property to defendant.

On the thirteenth of July, 1863, the defendant conveyed the west 10 acres to William P. Kellogg, by deed, whose description was as follows:

"All that piece of land situate in the county of Douglas, and territory of Nebraska, and described as follows, to-wit: Commencing at the south-west

---

[1] Equity will relieve against a mutual mistake in regard to something material to the transaction. Fritzler v. Robinson, (Iowa,) 31 N. W. Rep. 61, and note; Griffith v. County of Sebastian, (Ark.) 3 S. W. Rep. 886; Muhlenberg v. Henning, (Pa.) 9 Atl. Rep. 144; Henderson v. Stokes, (N. J.) 8 Atl. Rep. 718. See, also, Guilmartin v. Urquhart, (Ala.) 1 South Rep. 897, and note; Pearce v. Pettit, (Tenn.) 4 S. W. Rep. 526.

corner of lot No. six, (6,) in the Capitol addition to the city of Omaha; thence running east eight hundred and sixty feet along the south line of said lot No. six; thence running due north five hundred and twenty-six feet to the north line of said lot six; thence running west forty-five feet along the said north line of said lot six to the east line of lot No. five, (5,) in said Capitol addition to the city of Omaha; thence running south along said east line of said lot number five twenty-nine feet; thence running west along the north line of said lot number six eight hundred and fifteen feet to the north-west corner of the same; thence running south along the west line of said lot six, four hundred and ninety-seven feet to the place of beginning; supposed to contain ten acres more or less."

On the fourteenth of November, 1863, the defendant made a further conveyance to said Kellogg, the description in which reads as follows:

"All that certain piece of ground situate in the county of Douglas, and territory of Nebraska, to-wit: Beginning at the south-east corner of lot number six, (6,) in the Capitol addition to the city of Omaha; thence running north five hundred and twenty-six feet; thence west five hundred and fifteen feet, thence south five hundred and twenty-six feet; thence east five hundred and fifteen feet, to the place of beginning, containing six and 22-100 acres more or less."

It will be noticed in the first deed to Kellogg that the east line is described thus: "Thence running due north five hundred and twenty-six feet to the north line of said lot six," while in the last deed the description is simply "running north five hundred and twenty-six feet." Beyond doubt the first deed conveyed the entire western part of the lot, and the question is whether the last deed was intended to convey the eastern and remaining portion of the lot. In 1885 it was discovered that the east line of said lot, beginning at the south-east corner of said lot and running north to Farnam street, was more than 526 feet in length, and that between the property, as described in the last deed to Kellogg, and Farnam street, was a narrow gore 6 to 10 feet in width on the east line, and narrowing as it went westward. The question therefore presented is whether the parties, by this last deed, intended to convey the entire eastern portion of the lot extending north to Farnam street, or simply so many square feet of ground as indicated by the description, leaving unconveyed and as the property of defendant this narrow gore along the line of Farnam street. Upon this question the testimony of the two immediate parties, Kellogg and Chapman, is absolutely and unqualifiedly contradictory. Kellogg testifies positively that the intention was to purchase the entire amount, and Chapman as positively denying any such intent. Their testimony, thus contradictory, may fairly be put one side, and the question solved upon the other testimony, and from this there can be little doubt as to the truth.

In the first place, the use of measurements, exactly corresponding with the measurements upon the original plat, is very potent evidence of an intent to convey all that, according to those measurements, was embraced within the lot. In the second place, no sane man would purchase such a body of land, leaving such a narrow gore between that land and a principal street, and no honorable man would make a conveyance

intending to reserve to himself such a narrow gore so situated, without a clear expression of an intent to so reserve. I do not mean to charge upon the defendant in this case dishonorable conduct in the making of this defense. It may well be that an honorable man, feeling himself aggrieved, as defendant undoubtedly does, by virtue of the transactions had between Kellogg and himself in respect to the entire lot, should seek to take advantage of what appears to be a technical defect in the deeds, to obtain the compensation which he feels himself entitled to for the entire property; but it cannot be that an honorable man, such as I have no reason to doubt defendant is, could in 1863 have made such a deed, using the description and measurements expressed upon the original plat, and with no further words of explanation, with an intent to not convey the entire lot, but to reserve to himself such a narrow gore of no value in itself, but only as cutting off connection between the property conveyed and a principal street of the city, and that, the one from which access to and from the property was chiefly to be had. *Third*, the silence of the defendant and his failure for 22 years to assert any title to this gore, in view of the large improvements made upon a part of the tract, the constant payment of taxes by his grantee and subsequent grantees, and the occupation by a lessee, is very strong evidence that he supposed he had, and had intended to convey the entire lot. *Fourth*, the testimony of George B. Lake, a disinterested witness, a gentleman of high character, one who for 17 years was an honored member of the supreme court of the state, one whose examination first disclosed the mistake, and who went to the defendant to obtain a quitclaim, is entirely satisfactory. To him the defendant admitted that he supposed he had conveyed all of lot 6. From these various matters there can be no doubt that the parties were negotiating for the entire balance of lot 6, and that the intention was by the deed to convey such balance. There was a mistake in the description, and such a mistake as a court of equity will always correct.

Further, defendant insists that he never received the stipulated price, and therefore there should be no decree correcting the mistake. Both parties agree that the price was $600. There was a judgment, which was a lien upon the land, amounting to a little over $300. It is not disputed but that Kellogg paid at the time about $300 in cash. Kellogg testifies that he was to pay, and did pay, such judgment, making the amount in cash paid by him in excess of $600. Defendant testifies that Kellogg was to obtain an assignment to him, Chapman, of such judgment, in order that he might obtain its collection from the property of one of the judgment debtors other than the one who had held and conveyed to him this land. The deed, as produced, recites a consideration of $600 and purports to be a conveyance of the property subject to the lien of this judgment. Kellogg testifies that these last words were interpolated after the deed had been executed and delivered, and his testimony finds some little support in the uncertain recollection of Byron Reed, who was register of deeds. Defendant denies any such interpolation. Kellogg testifies that he paid this judgment, and received a re-

ceipt from plaintiff's attorneys, and his testimony in this respect is supported by that of one Gilbert, an attorney, who saw and used the receipt in the trial of a subsequent case. Defendant testifies that years after he obtained an assignment of this judgment, or rather an order for its process, from one of the plaintiff's attorneys, and subsequently secured its collection and satisfied the judgment, and his testimony finds support from the records of the case. Kellogg's testimony as to the agreement to obtain an assignment is indefinite and unsatisfactory.

Did defendant receive payment of the full consideration? I must say I think the question is a little doubtful. But these things must be noticed: It does not appear what, if anything, defendant paid to obtain the control of this judgment. Kellogg remained for a year or two the owner of this entire property, and for a series of years the owner of a large undivided interest in it. During all those years defendant made no effort to collect from Kellogg, or from this property, that which he now claims was the unpaid portion of the price. Such inaction is very significant. And while I do not think the question entirely clear, it must be adjudged that he has failed to prove this affirmative defense. Hence, as the mistake in the description unquestionably existed, the plaintiff is entitled to a decree as prayed for.